**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WINDY CITY MARKETING, INC.,

     Plaintiff,

     v.

PLACES ADVERTISING, INC.,

     Defendant.

Case No. 07 C 6401

Judge Gottschall

Magistrate Judge Ashman

**DEFENDANT'S BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant, Places Advertising, Inc., by its attorneys, Danny L. Worker and Siobhán M. Murphy, submits its brief in support of its motion to dismiss Plaintiff's First Amended Complaint for want of subject matter jurisdiction, pursuant to Rule 12(b)(1) and in the alternative, to dismiss, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted.

### JURISDICTIONAL FACTS

Plaintiff and Defendant are both Illinois citizens. Plaintiff alleges that its coupon book cover design and 'introduction page' have been infringed. As of the institution of this suit, neither the design nor the introduction page was registered by the United States Copyright Office.

### JURISDICTIONAL ARGUMENT

"[N]o action for the infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. §§ 411(a).[1/] This rule implements a policy that the courts consider the

---

[1/] Some works are eligible for preregistration, but that is irrelevant here.

views of the Copyright Office, as to whether "the material deposited constitutes copyrightable subject matter and the other legal and formal requirements of [copyright] have been met." H.R.Rep. No. 94-1476, at 156. A rule forbidding institution of an action until a condition has been satisfied means that satisfaction of the condition while the suit is pending is insufficient, and plaintiff must start anew. See, e.g., *McNeil v. United States*, 508 U.S. 106 (1993) (prohibition on institution of suit until administrative claim was resolved required dismissal of suit filed before the administrative claim's resolution, even if that step occurred while the suit is pending). Plaintiff alleges only that it "deposited copyright applications and associated material on 11/6/07". See Amended Complaint ("Am.Compl.") at ¶ 8. The Seventh Circuit has held that the "significance of registration is that it is a prerequisite to a suit to enforce a copyright. More precisely, **an application to register must be filed, and either granted or refused, before suit can be brought**." *Gaiman v. McFarlane*, 360 F.3d 644, 655 (7th Cir. 2004)(emphasis added).[2/] Under *Gaiman*, Plaintiff filed suit too soon.

The requirement of Section 411(a) has widely been treated as jurisdictional. *In re Literary Works in Electronic Databases Copyright Litigation*, ___ F.3d ___, 2007 WL 4197413 (2d Cir., 2007)(collecting cases); *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1208 (10th Cir.2005). Some courts allow a party to cure this defect after filing suit, see e.g., *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 387 (5th Cir.1984); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 (11th Cir.1990), *criticized by Harris v. Garner*, 216 F.3d 970

---

[2/]In 2003, the Seventh Circuit held that the failure to obtain a registration does not render a copyright invalid. *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir.2003) ("a copyright no longer need be registered with the Copyright Office to be valid, [but] an application for registration must be filed before the copyright can be sued upon"). The opinions in *Gaiman* and *Substance, Inc.* are both by Judge Posner. Plaintiff asserts that *Substance, Inc.* held that suit may be initiated without waiting for a decision on the application. In context, and in light of *Gaiman*, there was no such ruling.

(11th Cir. 2000)(disagreeing with *M.G.B.* that lack of jurisdiction could be cured by amendment, rather than by dismissal followed by a new filing). However, the language of section 411(a) is clear and unambiguous.    Any result that allows a plaintiff to first institute suit and later obtain registration is in direct conflict with Congress' mandate. Accordingly, Plaintiff's copyright claim must be dismissed. As that is the sole alleged basis for federal question jurisdiction and as the parties are both citizens of Illinois, the subject complaint must be dismissed for want of jurisdiction.

## RULE 12(b)(6) ARGUMENT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[P]laintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* It is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief. *Id.* at 1968-69. The factual allegations must raise a right to relief above the speculative level. *Id.* (citations omitted). In short, a complaint that fails to set forth "enough facts to state a claim to relief that is plausible on its face" should be dismissed. *Id.* at 1974. In this analysis, the exhibits to the Complaint are a part of it. Fed.R.Civ.P. 10(c). Plaintiff's Complaint contains sections, which might be construed as three counts. They are titled "Infringement of Windy City's Copyrights"; "PAI's Intentional Interference with Business Relations" and "PAI's Intentional Interference with Prospective Economic Advantage". Plaintiff has withdrawn paragraphs formerly appearing under the header "Misappropriation of Windy City's Trade Secrets", but still mentions trade secret. See Am.Compl. at ¶¶ 10, 27. This is apparently a

remnant of the prior Complaint, and not an effort to assert issues otherwise withdrawn. In any event, as the remnant is unsupported by allegations sufficient under *Twombly*, it must be disregarded.

## 1.    Plaintiff Fails to Plead Copyright Infringement.

Plaintiff and Defendant both market to restaurants, spas, and service companies by offering to publish their ads in direct mail coupon books. Both use cover art suggesting the nature of the businesses who have coupons inside. Both depict scenes or things suggestive of luxury – happy people, fine dining, spas, and health clubs.

## A.    Relevant Facts

Plaintiff is a direct mail coupon book publisher. Plaintiff's local book is titled "inside chicago."[3/]  See Am.Compl., Ex. A, B. Its distribution areas are in metropolitan Chicago and Las Vegas, Nevada. See Am.Compl., ¶ 9, Ex. B.  Plaintiff's customers are businesses that pay for coupons to be included in Plaintiff's books. See Am.Compl., Ex. A, B. Defendant is also a direct mail coupon book publisher.  Its books are titled "Places."  See Am.Compl., Ex. E and F.  Its distribution areas are suburban.  Defendant is preparing to publish in the Chicago;  Defendant understands that Plaintiff has just sent books to suburban households,  in direct  competition with Defendant's established suburban zones.  Despite the above, Defendant's product is distinct from Plaintiff's, not only in quality of printing, but also in types of exposure.  Defendant provides its advertisers an internet presence, where consumers can print their own coupons, a point of sale display of the books and competitive pricing.  Am.Compl., Ex. F.

---

[3/]The Nevada book is called "inside las vegas."  Plaintiff's known suburban book is called "inside chicago."

Plaintiff's coupon book is 8.5" x 3.5."  In the example attached to the Amended Complaint as Ex. A, the logo appears in the upper left hand area.  Its letters are white and silver.  The white letters are, all lower case, in a blocky sans serif font.  The word "inside" in the logo is white on a silver box.  The silver box extends to the upper left hand corner.  The box is a third of the height and a fourth of the width of the cover.  The word "chicago", again all lower case,  is in a smaller silver font on a photograph of city buildings, taken from above, and screened in blue monochrome.  This field of blue is an irregular shape, as if it were a rectangle laid underneath other elements of the cover, including the centered white box used for the recipient's address, a notation as to the 'edition', the bulk mail postage box,  and a photo of a part of a woman's face, with her eye closed, on the far right, midway down the cover.  A blurred photo of a smiling man and woman occupies the left lower two-thirds of the cover.  The words "discover the best in the city" appear in white on the lower left hand edge of the photo.  The remainder of the cover consists of photographs of a plate of salad and the torso of a man lifting weights.  Am.Compl. at Ex. A.  Additional examples of the Plaintiff's "inside chicago" covers are included in Defendant's **Exhibit 1**.  Plaintiff's 2008 edition, directed to the Western Suburbs, is attached as **Exhibit 2**. These versions of Plaintiff's cover are distinct.  The monochrome view of the buildings generally extends all the way from the upper left hand corner to the upper right hand corner.  The words "inside chicago" are centered, on a bar  silver rather than a field.  The font  used is heavier.  The word "chicago," though in lower case and in silver, is in the same size and font as the word "inside."  **Exhibit 1**.  The 2008 book, **Exhibit 2** uses a new photograph, this time taken from the same angle as that used by Defendant, in a brown monochrome.  The layout is otherwise unchanged from the Fall '07holiday Edition, but the salad is replaced by seafood and the man lifting weights is replaced by hands holding a white flower.  Three versions of

Plaintiff's inside Las Vegas book are attached as **Exhibit 3**. They feature some of same images and use monochromatic fields of color similar to those used in "inside chicago".

Defendant's coupon books are 8.5" x 3.5".[4/] Three different versions are attached as **Exhibit 4**. In the example attached to the Complaint as Ex. E, the "Places" logo appears in the upper left hand corner. Its letters are white, on a bronze background, in a curvilinear font, and in both upper and lower case. The bronze box extends over two thirds of the height and a third of the width of the cover. Underneath it is a date. Next to the logo is the phrase "Where you want to be..." and the name of a relevant suburb (i.e., "GLEN ELLYN"), appears in bronze, in all capital letters. These words are placed over a photograph of city buildings, taken from below, and printed in full color. The mailing label box and the postage box appear in the center and upper right hand corners of the cover, respectively. No additional photograph is laid over the city-scape. Four photographic images run along the bottom of the cover, all in focus: A gourmet dinner, a side view of a woman receiving a massage, a spa-like water scene, and a man and woman, apparently over dinner with friends, smiling. Am.Compl. at Ex. E. Like Plaintiff, Defendant has altered its book cover. The current design is included within **Exhibit 4**.[5/] Examples of other 8.5" x 3.5" coupon books are attached as **Exhibit 5**. Like the books at issue in this case, each has a box for the recipient's address toward the center with the postage in the upper right hand corner.

The promotional materials for the two companies are presentation sheets on company letterhead, each with its own trade mark, distinct color schemes, names, addresses, and contact

---

[4/]Plaintiff alleges that its coupon book size is unique. While this may be assumed for purpose of a Rule 12(b)(6) motion, it is simply not true. A few other examples of similar books are collected as **Exhibit 3**.

[5/]Notably, Plaintiff apparently chose not to attach its varying covers, and instead cherry-picked only one to rely upon.

information.   Am.Compl. at Ex. B, Ex. F.   Plaintiff's color scheme is green and grey (possibly silver). Defendant again uses bronze with the same photographs as appear on Defendant's cover now running vertically along the left hand of the page.   Plaintiff's presentation is composed of five paragraphs.   Defendant's is six.   Two of the parties' paragraphs share the same generic headers. ("Introduction" and "About our Product").   The text under those headers differs in style and idea (Plaintiff describes its offering as "motivational mail."   Defendant does not; Defendant offers "internet exposure."   Plaintiff does not).   Defendant's third paragraph (Direct Mail + Internet Exposure) is nothing like any of Plaintiff's remaining categories, no doubt because it is stressing a unique aspect of Defendant's product.   The rest are more or less similar (Who Should Advertise vs. Who Will Advertise; Space is Limited vs. Limited Offering; Future Rewards vs. Our Commitment). Both companies tout their products.   Plaintiff is selling "motivational mail" and years of service. Defendant is selling a "four-color certificate booklet coupled with internet exposure" and a "complementary acrylic display with extra certificate booklets."

## B.     Analysis

To establish copyright infringement, one must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361 (1991). The courts apply an "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Atari, Inc. v. North American Philips Consumer Elecs. Corp.,* 672 F.2d 607, 614 (7th Cir.1982);   As the Seventh Circuit has stated, courts may make "side by side and ocular comparisons" to determine whether substantial similarity exists. *Wildlife Express v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507, n. 1 (7th Cir.1994).

*see also, Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir.2002) (ruling on motion to dismiss copyright infringement claim after considering literary documents referred to in and central to the complaint); *Boyle v. Stephens, Inc.,* 1998 WL 80175, at *4 (S.D.N.Y. Feb. 25, 1998)("A court may, therefore, dismiss a copyright infringement claim on a 12(b)(6) motion if it concludes no reasonable jury could find that the two works are substantially similar, or it concludes that the similarities between the two works pertain only to unprotected elements of the works.").

"It is a principle fundamental to copyright law that a copyright does not protect an idea, but only the expression of an idea." *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir., 1996)(internal quotations and citations omitted). Consequently, the Court must determine "whether the similarities shared by the work are something more than mere generalized idea[s] or themes." *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48-49 (2d Cir.1986) (quoting *Warner Bros. Inc. v. American Broadcasting Cos., Inc.,* 654 F.2d 204, 208 (2d Cir.1981)). The determination of whether the parties' works are "substantially similar" may be made by a court as a matter of law. *Warner Bros. Inc. v. American Broadcasting Companies, Inc.,* 720 F.2d 231, 240 (2d Cir.1983). If a court finds that no reasonable jury could find the works  substantially similar, or if it concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement. *Buckman v. Citicorp,* No. 95-0773, 1996 WL 34158, at *3 (S.D.N.Y. Jan 30, 1996), *aff'd* 101 F.3d 1393 (2d Cir.1996). The boundary between idea and expression is such that copyright protects only "the 'pattern' of the work ... the sequence of events and the development of the interplay of characters." Zechariah Chafee, *Reflections on the Law of Copyright,* 45 Colum.L.Rev. 503, 513 (1945).

The recognition that ideas are not protected is embodied in the *scenes a faire* doctrine. This doctrine refers to incidents, characters, or settings that are as a practically indispensable, or standard

in the treatment of a given topic. *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007 (7th Cir., 2005). Under this doctrine, "a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 929 (7th Cir.2003); see also *Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 913-14 (7th Cir. 1996); *Atari*, 672 F.2d at 616-17; *Williams v. Crichton*, 84 F.3d 581, 587-89 (2d Cir.1996). "If a drunken old bum were a copyrightable character, so would be a drunken suburban housewife, a gesticulating Frenchman, a fire-breathing dragon, a talking cat, a Prussian officer who wears a monocle and clicks his heels, a masked magician, ... and, in Learned Hand's memorable paraphrase of *Twelfth Night,* 'a riotous knight who kept wassail to the discomfort of the household, or a vain and foppish steward who became amorous of his mistress.'" *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930). "It would be difficult to write successful works of fiction without negotiating for dozens or hundreds of copyright licenses, even though such stereotyped characters are the products not of the creative imagination but of simple observation of the human comedy." *Gaiman*, 360 F.3d at 660. In short, when similar features of a work are "as a practical matter indispensable, or at least standard, in the treatment of a given idea, they are treated like ideas and are therefore not protected by copyright." *Apple Computer Corp. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir.1994) (internal quotation marks and citation omitted).

These principles are particularly relevant where Plaintiff accuses Defendant's coupon book cover and introductory page of infringing its own. Plaintiff is not entitled to protect the idea that a coupon book's contents will include fine dining, spas and other luxurious services or offerings. Plaintiff is not entitled to prohibit all depictions of happy people, food, and cities on coupon book

covers. Plaintiff is not entitled to bar Defendant from using distinct embodiments of similar *scenes a faire*. On an ocular examination, however, Defendant's embodiment and layout of those images is distinct. An ordinary reasonable person would not conclude that the Defendant unlawfully appropriated the protected creative elements of Plaintiff's cover.

Plaintiff chose to attach only its blue cover design, in which it pushed its logo to the left, on a field of silver, and put the word "chicago" in smaller font. It then compared this to Defendant's original design, which has a logo to the left, on a field of bronze, and which had blue in the city-scape by virtue of the color of the sky. Even so, the covers have wholly distinct logos, with different names, different background colors, and different fonts. Both covers have white boxes for the address of the recipient to be placed in the center of the cover. Such placement on mailed products is again, traditional. Finally, both have boxes for prepaid postage permit numbers. The boxes appear in the upper right hand corner. This, too is the traditional place for postage. These commonalities are clearly not due to any protected creative layout, and must be disregarded in a copyright analysis.

Both Plaintiff and Defendant use a city scape in the upper right hand side of the cover (or in most examples of Plaintiff's book, across the entire top of the cover). However, until 2008, Plaintiff consistently used an image taken from above, relatively close to the buildings, in a doctored monochrome, without any depiction of the sky. The effect of Plaintiff's city scape is to have a field of color across the top of its books. Defendant uses a crisp, four color image, that includes black, white, gold and blue. This image is taken from below, at a relative distance, showing the sky-line, and of course, the sky. Defendant's city scape could not be confused with that of the Plaintiff earlier covers. Plaintiff's 2008 cover, **Exhibit 2**, is much closer to that of Defendant, but the net effect is a field of color rather than a crisp four color image of the city. Plaintiff's choice of brown for the 2008

book echoes, for the first time, the bronze color scheme used by Defendant.  Plaintiff's claim of copyright infringement, however, may not be based on Plaintiff decision to change its cover after Defendant first published its own cover.

Both Plaintiff and Defendant use a picture centered on a man and woman, smiling together. Plaintiff's is a large close shot, out of focus, of a couple hugging.  It is not clear where they are or what they are doing.  This photo appears in the lower left hand corner of each of Plaintiff's covers (**Exhibits 1, 2 & 3**).  Defendant uses a photograph shot from a medium distance, in focus, of a couple sitting at a table, with friends, shoulder to shoulder, laughing.  **Exhibit 4.**  The woman has a glass of wine in her hand.  *Id.*  Neither the image nor its placement in the overall designs could be confused with that used by Plaintiff.

Both Plaintiff and Defendant use a picture of food.  Prior to 2008, Plaintiff's was a mid-sized image of a salad placed in the lower center to right side of the cover.  **Exhibit 1**.  In 2008, Plaintiff substituted a seafood dish in the same location, same size.  **Exhibit 2**.  Defendant uses a smaller image of a steak entree, originally placed in the lower left corner of the cover.  **Exhibit 4.**  Newer versions place this image above the address box and to the left.  *Id.*  Neither the image nor its placement in the overall design could be confused with those used by Plaintiff.

Both Plaintiff and Defendant have an image of a woman resting.  Plaintiff's is a small image of a part of a woman's face, lying on her back against a white surface.  It is placed in the far right of the cover, midway down the page.  **Exhibits 1 & 2**.  Defendant's image is more than twice the size of Plaintiff's; it shows a woman lying face down, with hands massaging her back, and flower petals scattered on the massage table.  **Exhibit 4**.  Her whole face is in view.  *Id.*  The image appears at the bottom of the page, toward the center. Neither the image nor its placement in the overall designs could be confused with that used by Plaintiff.

Prior to 2008, Plaintiff's lower right hand image was of a man's torso.  **Exhibit 1**.  The man is lifting weights.  There is no comparable image in Defendant's cover.  The image has been replaced by a pair of hands holding a flower.  Again there is no comparable image in Defendant's cover.  **Exhibit 2**.  Defendant's cover has an image of a water feature at a spa or hotel.  **Exhibit 4**. This image was originally located in the lower center of the cover.  Newer versions place it below and to the left of the address box.  There is no comparable image in Plaintiff's covers.

On these facts, the common point between the Plaintiff's cover art and the accused cover art is that both convey the same idea, through differently arranged and differently depicted *scenes a faire*.  The placement of the sender's information, the recipient's information, and the postage are clearly, like ideas, not protected.  When similar features of a work are "as a practical matter indispensable, or at least standard, in the treatment of a given idea, they are treated like ideas and are therefore not protected by copyright." *Apple Computer,* 35 F.3d at, 1444  (internal quotation marks and citation omitted).  Here, disregarding the plant of names, addresses, and postage, and bearing in mind that the covers are composed of *scenes a faire*,  no reasonable jury could find infringement. Setting aside the features that come of their use in the mail, the covers each reflect branding by a distinct company, each is differently composed and each  consists of differently laid out and differently treated *scenes a faire*.

The introduction sheets of the two parties are similarly distinct.  Plaintiff, in essence, seeks to forbid its competitors from presenting information about their companies and products using a resume-style for or the headers "Introduction" and "About our Product".  The copyright law is not intended to allow a party such broad prohibitions on lawful competition.  The ideas expressed by each company – that each offers ad placement in a quarterly coupon book that goes to affluent households – are not protected.  Their logos, color choices, words and presentation style are distinct.

Again, no reasonable jury could find that the Plaintiff's introduction sheet is substantially similar to that of Defendant, or that Defendant's introduction sheet infringes that of Plaintiff.

Finally, in the alternative, this Court should strike Plaintiff's prayers for an award of attorney's fees or statutory damages under the Copyright Act because the copyrights have not yet been registered, and infringements, if any, therefore pre-date registration. Under the Act, a plaintiff may not recover statutory damages under 17 U.S.C. § 504(c) or attorney's fees under 17 U.S.C. § 505 if: "any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. Acts of infringement that occur after the copyright is registered do not constitute new acts of infringement. *Mason v. Montogmery Data, Inc.*, 967 F.2d 135, 143 (5th Cir.1992). They are deemed a continuation of any original infringement that began prior to the registration. *Id.* Accordingly, Plaintiff here is barred from recovering statutory damages and attorney's fees for any conduct that could be at issue in this matter. *Id.*

**2.      Plaintiff Fails to Plead Intentional Interference with Business Relationships**

Plaintiff attempts to allege interference with both existing customers and prospective customers. Interference with contract and interference with business relations (sometimes called prospective economic advantage) are related torts. In Illinois, a plaintiff can recover for interference with existing contractual rights by proving (1) a valid and enforceable contract between the plaintiff and another; (2) defendant's awareness of this relationship; (3) an intentional and unjustified inducement of a breach of the contract; (4) actual breach caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 676 (1989). Interference with prospective business relationships has similar elements: (1) a reasonable expectancy of a valid business relationship, (2) defendant's knowledge of

the expectancy, (3) an intentional and unjustified interference by the defendant that induced the termination of the expectancy, and (4) damages. *Evans v. City of Chicago*, 434 F.3d 916, 929 (7th Cir.2006) (quoting *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 667 N.E.2d 1296, 1299 (1996)).

Plaintiff alleges that unnamed customers were approached by Defendant. Am.Compl. at ¶¶ 22-27. Plaintiff does not allege that any of those existing or potential customers were actually under exclusive contract with Plaintiff or that even one cancelled an order it had placed with Plaintiff, breached its contract or terminated an expected relationship. In the absence of allegations of lost business, Plaintiff has failed to set forth a claim of either tort of interference with business. *International Marketing, Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731-32 (7th Cir., 1999). For this reason alone, Plaintiff's interference counts must be dismissed.

Further, the Amended Complaint itself alleges that Defendant's purpose was competitive – an offer to publish coupons. Am.Compl. at ¶ 22. There are numerous privileges that serve as complete defenses to the interference torts. *Herman v. Prudence Mut. Cas. Co.*, 41 Ill.2d 468, 244 N.E.2d 809, 812 (1969). One such defense is competition. See *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir.1999)("competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system. Competition is not a tort ...."). A competitor is entitled to this defense unless its conduct is motivated solely by spite. *Strosberg v. Brauvin Realty Servs., Inc.*, 295 Ill.App.3d 17, 691 N.E.2d 834, 846 n. 2 (Ill.App.Ct.1998). Accordingly, Plaintiff's interference counts must be dismissed.

WHEREFORE, Defendant, Places Advertising Inc., prays this Court dismiss Plaintiff's Amended Complaint for the reasons stated above pursuant to Rule 12(b)(1), or in the alternative to dismiss pursuant to Rule 12(b)(6).

Respectfully submitted,

Places Advertising, Inc.


By: _____/s/ Siobhán M. Murphy_____

One of Its Attorneys

Danny L. Worker  – ARDC No. 619554
Siobhán M. Murphy – ARDC No. 6207431
Lewis Brisbois Bisgaard & Smith LLP
550 West Adams Street, Suite 300
Chicago, IL  60661
312.345.1718/Fax: 312.345.1778