Westlaw

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 80175 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

Boyle v. Stephens, Inc.
S.D.N.Y.,1998.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
John C. ("Jack") BOYLE, Plaintiff,
v.
STEPHENS, INC., Wells Fargo Bank, N.A., and Wells Fargo Nikko Investment Advisors, Defendants.
No. 97 Civ. 1351(SAS).

Feb. 25, 1998.

Raymond J. Dowd, New York City, for plaintiff.
Michael B. Carlinsky, Barbara Moses, Lara M. Krieger, Orrick, Herrington & Sutcliffe, LLP, New York City, for defendants.

**OPINION AND ORDER**

SCHEINDLIN, J.

*1 On September 25, 1997, plaintiff filed a Second Amended Complaint ("Complaint") alleging claims for violations of the Copyright Act, 17 U.S.C. §§ 106(1), 106(2), and 106(4), quantum meruit, and breach of contract of bailment.[FN1] Defendants moved to dismiss all of plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6). In an opinion issued on December 5, 1997, this Court denied defendants' motion. See Boyle v. Stephens, Inc., 97 Civ. 1351, 1997 WL 760498 (S.D.N.Y. Dec.5, 1997)(Boyle II). On December 24, 1997, defendants moved for reconsideration of that opinion pursuant to Local Civil Rule 6.3. For the reasons stated below, defendants' motion for reconsideration is granted in part and denied in part.

> FN1. Plaintiff filed his original Complaint ("Initial Complaint") on February 26, 1997, alleging copyright infringement and misappropriation of trade secrets. He withdrew that Complaint and filed an Amended Complaint on May 27, 1997, which alleged claims for copyright infringement, breach of contract, misappropriation of trade secrets and fraudulent concealment. The Court dismissed Plaintiff's claims for misappropriation of trade secrets and fraudulent concealment without leave to amend, and dismissed the remaining claims with leave to amend. See Boyle v. Stephens, Inc., 44 U.S.P.Q.2d 1138, 1997 WL 529006 (S.D.N.Y.1997)(Boyle I).

**I. Legal Standard**

The legal standards by which a Rule 6.3 Motion for Reconsideration is decided are the same as those governing former Local Rule 3(j). Wishner v. Continental Airlines, 94 Civ. 8239, 1997 WL 615401, at *1 (S.D.N.Y. Oct.6, 1997) (citing Jones v. Trump, 971 F.Supp. 783, 785 n. 2 (S.D.N.Y.1997)). Pursuant to Local Rule 6.3, a party seeking reargument must demonstrate that the Court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." Anglo American Ins. Co. v. Calfed, Inc., 940 F.Supp. 554, 557 (S.D.N.Y.1996) (quoting Morser v. AT & T Info. Sys., 715 F.Supp. 516, 517 (S.D.N.Y.1989)); see also Frankel v. ICD Holdings S.A., 939 F.Supp. 1124, 1126 (S.D.N.Y.1996). Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." Wishner, 1997 WL 615401, at *1 (citing Calfed, 940 F.Supp. at 557);Ades v. Deloitte & Touche, 843 F.Supp. 888, 892 (S.D.N.Y.1994). Parties may not use a motion for reargument to "advance new facts, issues or arguments not previously presented to the court." Great American Ins. Co. v. J. Aron & Co., 94 Civ. 4420, 1996 WL 14455, at *2 (S.D.N.Y. Jan.16, 1996) (quoting Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 86 Civ. 6447, 1989 WL 162315, at *4 (S.D.N.Y. Aug.4, 1989)). The decision to grant or deny a motion for reargument is within the sound discretion of the district court. See Cohen v. Koenig, 932 F.Supp. 505, 507 (S.D.N.Y.1996); Schaffer v. Soros, 92 Civ. 1233, 1994 WL 592891, at *1 (S.D.N.Y. Oct.31, 1994).

**II. Copyright Claims**

A. *Factual Background on Copyright Claims*

The following factual allegations, in addition to those set forth in *Boyle I*, are assumed to be true for purposes of this motion. Plaintiff holds a copyright in two original works of authorship which describe a novel concept for a financial product called "Moneyfor" mutual funds. See Complaint at ¶¶ 17-19. The copyrighted works are (1) Moneyfor advertising materials; see id. at ¶ 15, and Ex. A ("Direct Mail Packet"); and (2) an "Executive Summary" of Moneyfor. See id. at ¶ 16, and Ex. E (the "Executive Summary").

EXHIBIT 8

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06401   Document 20-10   Filed 01/14/2008   Page 2 of 6

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1998 WL 80175 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

*2 In 1994, defendants filed with the Securities Exchange Commission a prospectus describing "LifePath" mutual funds, *see id.* at ¶ 91, and Ex. I (the "LifePath Prospectus"), and a "Statement of Additional Information," listing LifePath's trustees and officers. *See id.* at ¶ 113, and Ex. J (the "LifePath Addendum"). The LifePath funds are further described in a "Strategy Report" that defendants filed with the U.S. Patent and Trademark Office, *see id.* at ¶ 109, and Ex. K (the "LifePath Report"), and in LifePath's promotional materials, *see id.,* Ex. L (the "LifePath Brochure").

Plaintiff alleges that the LifePath Prospectus, LifePath Addendum, LifePath Report, and LifePath Brochure infringe on his copyrighted works. Specifically, plaintiff asserts that a comparison of LifePath's works with his own reveals a "comprehensive non-literal similarity evidencing direct copying." *Id.* at ¶ 96.

In *Boyle II,* this Court held that whether there is a comprehensive non-literal similarity between the two sets of material is for the jury to decide at trial-not for the Court to determine on a motion to dismiss. *Boyle II,* 1997 WL 70498, at 3-4. On reconsideration, I conclude that this holding was erroneous.

A. *Legal Standard for Motion to Dismiss*

In considering a 12(b)(6) motion to dismiss, a district court must limit itself to "facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 661 (2d Cir.1996) (internal quotations omitted). A court deciding such a motion must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). Furthermore, a 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint, because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Rather, dismissal can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bernheim,* 79 F.3d at 321 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

B. *Deciding Copyright Infringement Claims on a Motion to Dismiss*

1. *Legal Standard for Copyright Infringement Claims*

a) *Generally*

To state a claim for copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) copying of the protected elements of the copyrighted work. *Kev Publications v. Chinatown Today Publ'g Enters.,* 945 F.2d 509, 514 (2d Cir.1991) (citing *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). The mere fact that a work is copyrighted does not mean that every element of the work may be protected. *Feist,* 499 U.S. at 348. A copyright extends only to those components of a work that are original to the author. *Id.* at 345. Short phrases or single words do not exhibit the minimal creativity required for copyright protection. *See Arica Inst., Inc. v. Palmer,* 970 F.2d 1067, 1072 (2d Cir.1992); *see also* 37 C.F.R. § 202.1(a) (prohibiting registration of "[w]ords and short phrases such as names, titles and slogans" for copyright protection).

*3 Additionally, copyright protection for an original work does not extend to an idea or concept therein, "regardless of the form in which it is described, explained, illustrated, or embodied." 17 U.S.C. 102(b) (1988); *see also Williams v. Crichton,* 84 F.3d 581, 587-88 (2d Cir.1996). Once an idea is conceived, the copyright laws do not prevent others from exploiting it. *See Arica,* 970 F.2d at 1074.

The *expression* of an idea may be protected by copyright. However, under the "merger doctrine," a form of expression that is essential to conveying the idea is not protected; otherwise "protection of the expression would effectively accord protection to the idea itself." *Kregos v. Associated Press,* 937 F.2d 700, 705 (2d Cir.1991) (citations omitted); *see generally* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* ("Nimmer") § 13.03[B][3].

b) *Non-Literal Similarity*

Plaintiff may prove that defendants copied protected elements of his work, either by direct evidence or by demonstrating that defendants had access to his work and that the parties' works are "substantially similar." *See Arica,* 970 F.2d at 1071. Under the doctrine of comprehensive non-literal similarity, the requirement of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06401    Document 20-10    Filed 01/14/2008    Page 3 of 6

Not Reported in F.Supp.                                                                Page 3
Not Reported in F.Supp., 1998 WL 80175 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

substantial similarity may be satisfied where defendants have "appropriated the fundamental essence or structure of [a] plaintiff's work." *Id.* at 1073 (quotations and citations omitted). It is well-established that a court may determine the absence of substantial similarity as a matter of law. *See, e.g., Arica,* 970 F.2d 1067 (dismissing non-literal similarity claim on summary judgment); *Warner Bros. Inc. v. American Broad. Cos.,* 720 F.2d 231 (2d Cir.1983) (same). When a work contains both protectable and unprotectable elements, courts must "take care to inquire only whether the protectable elements, standing alone, are substantially similar." *Crichton,* 84 F.3d at 588;*see also Key Publications,* 945 F.2d at 514;*Churchill Livingstone, Inc. v. Williams & Wilkins,* 949 F.Supp. 1045, 1050 (S.D.N.Y.1996). Thus a court must filter out the unprotected elements of the copyrighted work-e.g., its elements that are unoriginal or that "merge" with ideas or concepts-before comparing the copyrighted and the allegedly infringing works. The court must then inquire whether a lay observer would consider the protectable elements to be substantially similar to the defendants' works. *See Crichton,* 84 F.3d at 589-90;*see generally* 4 Nimmer § 13.03[B][2].

2. *Application of Copyright Infringement Analysis on a Motion to Dismiss*

The *Boyle II* opinion cited *Cognotec Servs. Ltd. v. Morgan Guar. Trust Co.,* 862 F.Supp. 45, 50 (S.D.N.Y.1994), for the proposition that a motion to dismiss is not the proper procedural mechanism for evaluating substantial similarity. *See Boyle II,* 1997 WL 760498, at n. 2. However, *Cognotec* is distinguishable from the instant case. In *Cognotec,* the allegedly infringing work was a computer program used by banks to offer automated foreign exchange service to their currency trading customers. The court there followed *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693 (2d Cir.1992), which set out a three-step process for determining whether the non-literal elements of computer programs are substantially similar:

*4 [T]he three step procedure that *Altai* recommends that district courts apply is necessarily fact-determinative and requires detailed comparisons of computer programs. *Altai,* 982 F.2d at 704, 707-10. To adequately consider [defendant's] arguments would require a thorough and detailed factual exploration of [the copyrighted software], the various documents issued to and by [defendant], the foreign currency industry, as well as [defendant's] own program. *A motion to dismiss is not the proper procedural mechanism to make this inquiry.*

*Cognotec,* 862 F.Supp. at 50 (emphasis added).

However, *Altai* does not suggest that every comprehensive non-literal similarity case entails such a rigorous factual analysis. Indeed, the *Altai* court held that unlike the evaluation of artistic and literary works, ascertaining the substantial similarity of computer programs may require expert opinion, given the highly complicated and technical subject matter at the heart of such claims. *See also, Churchill Livingstone,* 949 F.Supp. at 1050 (granting summary judgment after noting that the fact-intensive *Altai* test is not necessary in straightforward, textual copyright cases).

In determining copyright infringement, "the works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings." *Walker v. Time Life Films, Inc.,* 615 F.Supp. 430, 434 (S.D.N.Y.1985) (citation omitted), *aff'd,*784 F.2d 44 (2d Cir.1986). If after examining the works themselves, this Court determines that there is no substantial similarity, then the plaintiff here can prove no facts in support of his claim which would entitle him to relief-the standard for dismissal under Rule 12(b)(6). *See Bernheim,* 79 F.3d at 321. A court may, therefore, dismiss a copyright infringement claim on a 12(b)(6) motion "if it concludes that no reasonable jury could find that the two works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the works." *Boyle I,* 44 U.S.P.Q.2d at 1141 (internal quotations omitted) (quoting *Buckman v. Citicorp,* 95 Civ. 0773, 1996 WL 34158, at *3 (S.D.N.Y. Jan.30, 1996), *aff'd*101 F.3d 1393 (2d Cir.1996)). *Accord Nelson v. PRN Prods., Inc.,* 873 F.2d 1141, 1143-44 (8th Cir.1989) (dismissing copyright claim on pleadings because no substantial similarity as a matter of law); *Cory Van Rijn, Inc. v. California Raisin Advisor Bd.,* 697 F.Supp. 1136, 1144-45 (E.D.Cal.1987) (same). I now turn to determining whether the works at issue here are substantially similar.

C. *Determining Substantial Similarity*

1. *Examining the Protected Elements of the Copyrighted Works*

Both of the copyrighted works and most of the allegedly infringing works explain a similar concept for a mutual fund. The Moneyfor Executive Summary and Direct Mail Packet describe a mutual fund that breaks down a large pool of investments into different risk allocations, thereby allowing the fund to be marketed to clients based on their individual needs. *See* Complaint, Exs. A, E. These copyrighted works explain that the mutual funds are directed, in part, at serving the needs of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06401  Document 20-10  Filed 01/14/2008  Page 4 of 6

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1998 WL 80175 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

investors planning for retirement. A customer may purchase one of eight "series" of Moneyfor Retirement Funds by matching the series' maturity date to his or her expected date of retirement. *See id.*

*5 Similarly, the LifePath Prospectus, the LifePath Registration, and the LifePath Brochure each describe LifePath mutual funds, which permit investment in different "series" of funds, based on an individual investor's projected retirement date.[FN2] *See id.*, Exs. I, K, L. According to these materials, the LifePath fund managers will modify the funds' investment composition as time progresses, so as to reduce the risk level of the investments as the maturity date approaches. *See id.*

> FN2. The LifePath Addendum, which consists of a list of the "Trustees and Officers" who manage the LifePath fund, does not describe the mutual fund concept. *See* Complaint at 24, and Ex. J. Because it is commonplace to include such a list in mutual fund promotional materials, plaintiff's copyrights cannot prevent defendants from creating such a list. *See Churchill Livingstone,* 949 F.Supp. at 1052 (stock elements are not copyrightable).

Plaintiff's copyright on the Moneyfor Executive Summary and Direct Mail Packet does not, of course, protect the idea or concept of an age-targeted, asset-allocated mutual fund. Additionally, under the merger doctrine, plaintiff's copyright does not preclude others from also describing such fund characteristics as the availability of individual-specific "series" and the shifting investment composition. Otherwise, plaintiff could prevent competitors from fully describing the mutual fund concept in a prospectus or other selling materials-a result the copyright laws do not contemplate.

The Complaint alleges that the defendants' works copy certain graphics from the Moneyfor Executive Summary and Direct Mail Packet. *See id.* at ¶¶ 91-99. There are only two graphics in plaintiff's works that bear any resemblance whatsoever to a portion of the allegedly infringing works. The first is a chart that is printed in the LifePath Direct Mail Packet. The chart simply states:

| Age (nearest) | |
|---|---|
| 25 | BUY-Moneyfor Retirement |
| 30 | Series 2029 |
| 35 | Series 2024 |
| 40 | Series 2019 |
| 50 | Series 2014 |
| 55 | Series 2009 |
| 60 | Series 1999 |
|   | Series 1994 |

*See id.*, Ex. A at 7, 10. The second graphic, which is included in the Moneyfor Executive Summary, states that:
All series will invest:
* 65% to 100% Stocks
* 00% to 35% Bonds
* 100% Money Market at any time

*See id.*, Ex. E at 8.

Assuming, arguendo, that the use of such simple graphics satisfies the requirement of originality, the merger doctrine excludes them from the umbrella of copyright protection. A contrary result would prevent others marketing age-targeted, asset-allocated mutual funds from summarizing in a brief, legible form the series that are appropriate for investors of certain ages or the investment composition of those series. *See Churchill,* 949 F.Supp. 1045, 1051 ("[c]opyright does not protect the mere individual choice of a common type of illustration").

Finally, because individual words or short phrases cannot be copyrighted, the term "series" is not protected, even if, as plaintiff asserts, he was the first in the mutual fund industry to use that term. *See* Complaint at ¶ 25. Accordingly, neither the use of the defining characteristics of an asset-allocated retirement fund, the use of basic graphics to illustrate those characteristics, nor the application of the term "series" in the mutual fund context are protected by copyright.

2. *Comparing the Works at Issue*

*6 After filtering out such unprotected elements from the analysis, a court must examine the works at issue to evaluate substantial similarity. A comparison of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06401    Document 20-10    Filed 01/14/2008    Page 5 of 6

Not Reported in F.Supp.    Page 5
Not Reported in F.Supp., 1998 WL 80175 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

parties' works reveals that their organization, structure, emphasis, tone, and theme are easily distinguishable. For example, the Moneyfor Direct Mail Packet, which is addressed to prospective mutual fund clients, explains the Moneyfor concept in folksy, informal language and employs dramatic use of capitalization and punctuation marks. It also utilizes an education theme: the envelope announces "HONOR ROLL plan details inside"; the return envelope states, "THE TEACHER'S PET OF MUTUAL FUNDS"; the cover letter reads, "we hope you will join [Moneyfor's] honor roll of clients"; and the attached brochure begins, "WE GET ALL-A's-IN THE MUTUAL FUND BUSINESS." *See id.,* Ex. A at 4, 6, 7, 12. In contrast, the LifePath Prospectus is a dry, legalistic document that begins with a description of LifePath funds and explains such financial and legal topics as fees, risk factors, management, and purchase and redemption instructions. *See id.,* Ex. I. The LifePath Report and LifePath Brochure are far more restrained in tone than the Moneyfor Executive Summary, and neither includes any language or imagery remotely related to plaintiff's education theme. *See id.,* Exs. K, L.

The Moneyfor Executive Summary targets regional securities dealers and invites them to join in delivering the Moneyfor Mutual Fund to the public. *See id.,* Ex. E. The document, which uses an informal tone, has one overarching theme: the advantages to regional brokers of selling the funds. Defendants' allegedly infringing materials, on the other hand, are directed at the consuming public, and thus have an altogether different thematic emphasis-the advantage to the individual consumer of purchasing the fund. *See id.,* Exs. I, K, L.

In summary, the only similarities between the parties' works are that they both contain descriptions of age-targeted, asset-allocated mutual funds, both use graphics to illustrate the funds' characteristics, and both use the term "series" to describe the funds. Because no reasonable juror could find there exists a substantial similarity between the protected expressive elements of plaintiff's works and defendants' works, plaintiff's claims for copyright infringement must be dismissed.

III. **Quantum Meruit Claim**

Defendants move to reconsider the denial of defendants' motion to dismiss the quantum meruit claim. *Boyle II* held that in most industries, "prior gratuitous, unsolicited disclosure of an idea does not create an enforceable contract implied in law, despite the defendant's use of the idea." *Boyle II,* 1997 WL 760498, at 6 and n. 3 (citing *Grombach Prods. v. Fred Waring,* 293 N.Y. 609, 616, 59 N.E.2d 425 (1944); *McGhan v. Ebersol,* 608 F.Supp. 277, 285 (S.D.N.Y.1985)). However, because plaintiff alleged that defendants asked him to disclose his idea, *see* Complaint at ¶¶ 45-48, the Court held that the quantum meruit claim could not be dismissed on the pleadings.

*7 Defendants contend that plaintiff's allegations concerning defendants' solicitation of his idea contradict an averment made in the Initial Complaint, which plaintiff prepared *pro se.* The Initial Complaint avers that plaintiff sent his copyrighted material to defendant Stephens, Inc. ("Stephens"), requesting that the company sponsor his proposed mutual fund, and that Stephens "refused the unsolicited offer." Initial Complaint, Ex. A ("Complaint Summary") at 1.

In light of this averment, defendants contend that the Court overlooked a controlling principle of law; namely, that "a plaintiff may not avoid the effect of factual concessions made in earlier iterations of his complaint simply by dropping them (or contradicting them) in later iterations." Defendants' Memorandum in Support of Motion for Reconsideration at 8-9 (citing *Andrews v. Metro North Commuter R.R.,* 882 F.2d 705, 707 (2d Cir.1989); *Savino v. Computer Credit, Inc.,* 960 F.Supp. 599, 601-02 (S.D.N.Y.1997)).

However, the authority on which defendants rely does not suggest that a litigant is estopped from making contradictory averments in successive iterations of his pleadings. To the contrary, the cases hold that making such pleadings is permissible, but that at trial, a jury may examine the inconsistent pleadings. *See Metro North,* 882 F.2d at 707; *Savino,* 960 F.Supp. at 602. Thus, even assuming, arguendo, that this doctrine applies to the pleadings of *pro se* litigants, the alleged inconsistency is appropriate for consideration by the finder of fact, not by the court on a motion to dismiss. Because defendants do not cite to any fact or controlling law that would have materially influenced the Court's decision regarding the quantum meruit claim, defendants' motion for reconsideration is denied.

IV. **Bailment Claim**

In their motion for reconsideration, defendants fail to specify any fact or controlling authority that the Court overlooked in denying defendants' motion to dismiss plaintiff's claim for breach of contract of bailment. Accordingly, defendants' motion to reconsider this decision is denied.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06401   Document 20-10   Filed 01/14/2008   Page 6 of 6

Not Reported in F.Supp.                                                                                           Page 6
Not Reported in F.Supp., 1998 WL 80175 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

## V. Conclusion

For the aforementioned reasons, (1) defendants' motion for reconsideration is granted with respect to the claims for copyright infringement; (2) on reconsideration, defendants' motion to dismiss plaintiff's claims for copyright infringement is granted; and (3) defendants' motion for reconsideration is denied with respect to the claims for quantum meruit and breach of contract of bailment. Accordingly, plaintiff's claims for copyright infringement are dismissed with prejudice.

SO ORDERED.

S.D.N.Y.,1998.
Boyle v. Stephens, Inc.
Not Reported in F.Supp., 1998 WL 80175 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.