
Westlaw.

Not Reported in F.Supp.                                                      Page 1
Not Reported in F.Supp., 1996 WL 34158 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**Buckman v. Citicorp
S.D.N.Y.,1996.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Ernie M. BUCKMAN, Plaintiff,
v.
CITICORP, Defendant.
No. 95 Civ. 0773 (MBM).

Jan. 30, 1996.

Ernie M. Buckman, Mount Vernon, NY, Plaintiff pro se.
J. Kelley Nevling, Jr., Citibank Legal Affairs Office, New York City, for Defendant.

OPINION AND ORDER

MUKASEY, District Judge.

*1 Plaintiff *pro se* Ernie M. Buckman sues Citicorp for infringement of his copyrights on "Buckman's Theory" and the "Applicard," for violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1994), and for tortious interference with precontractual relations under New York law. Defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendant's motion is granted.FN1

I.

Although a court generally may not look beyond the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read generously the papers of a *pro se* plaintiff makes it appropriate here to consider supplemental materials, such as plaintiff's memorandum of law. *See, e.g., Gil v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)* (considering *pro se* plaintiff's opposition affidavit); *Lucas v. New York City, 842 F. Supp. 101, 104 & n.2 (S.D.N.Y. 1994)* (considering *pro se* plaintiff's opposition papers); *Donahue v. United States Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990)* (same). Accordingly, the summary of facts in Part II of this opinion is drawn from a liberal reading of both plaintiff's complaint, and his memorandum of law in opposition to defendant's motion.

Moreover, Fed. R. Civ. P. 10(c) authorizes the court, in any case, whether the plaintiff proceeds *pro se* or through an attorney, to consider any exhibits mentioned in and attached to the pleadings. Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); 2A Moore's Federal Practice ¶ 10.06 (2d ed. 1995). This rule does not allow the court to adopt as true the full contents of the appended documents when their meaning is disputed, but allows the court to read an appended document "to evidence what it incontestably shows," assuming that an attached document is as the complaint describes it, or to conclude that the document "is what it appears to be," in the absence of a description in the complaint. *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2d Cir. 1995)*. Review of and reliance on these supplemental documents on a motion to dismiss is permissible because their inclusion in the pleadings affords the opposing party notice and an opportunity to respond, and makes it unnecessary to convert the motion into one for summary judgment. *Cortec Inds., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert. denied,503 U.S. 960 (1992)*. Here, plaintiff has attached to and incorporated by reference in his complaint, a copy of his allegedly protected work, the "Applicard" (Compl. Ex. E), and a copy of defendant's allegedly infringing work (*id.*Ex. F). Accordingly, those exhibits are part of plaintiff's pleadings and will be relied upon here.

II.

In 1988 plaintiff began researching the domestic and international problems of credit card fraud and "identification abuse." (Compl. ¶ 10) As a result of this research plaintiff developed "Buckman's Theory" and "Buckman's Theory Technology." Buckman's Theory, as described by plaintiff, is as follows:

*2 All PERSONAL TITLES have ORIGINS, PERSONAL IDENTIFICATION begin at BIRTH, making an OATH or AFFIRMATION, ONES' ACKNOWLEDGEMENT before an OFFICER of STATE to HIS or HER PERSONAL TITLE is THE SOLUTION to ONES' PERSONAL *TITLE IDENTIFICATION PROBLEM.*

(*Id.* at ¶ 12) (capitalization, spelling, punctuation,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
9

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 34158 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

grammar and emphasis in original). On January 11, 1989 Buckman applied for a copyright on the "Applicard -- text and compilation," an application for a photo-identification card, which the Copyright Office assigned registration number Txu 359 984.(*Id.* at ¶¶ 6-7) One day later, on January 12, 1989, Buckman formed "The Mighty Card, Inc." a Maryland corporation, to market Buckman's Theory Technology nationally and abroad. (*Id.* at ¶ 13) Four years later, on May 4, 1993 plaintiff registered his copyright on "Buckman's Theory," also a text and compilation, which the Copyright Office assigned registration number Txu 567 281.

In his complaint, plaintiff contends that defendant has "electronically reproduced Buckman's theory," by offering its customers "Citibank Photocards," credit cards with a photograph of the owner for extra security. Further, in his Memorandum in Opposition to defendant's motion, plaintiff contends that Citibank's application for a Citibank Photocard infringes on his copyrighted Applicard. (*Id.* at ¶ 34) Finally, Buckman states that he wrote a "Citicard C.E.O." in March 1994 to inform him of the infringement, but that he never received a response. (*Id.* at ¶¶ 35-36)

### III.

Defendant moves to dismiss plaintiff's complaint first on the basis that it is ambiguous and improperly pleaded. To meet <u>Fed. R. Civ. P. 8(a)(2)</u>'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," a copyright infringement claimant must allege:

(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright.

<u>Kelly v. L.L. Cool J.,</u> 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd without opinion,*23 F.3d 398 (2d Cir.), *cert. denied,*115 S. Ct. 365 (1994). These requirements ensure that a party receives fair notice of the allegations against it, so that it can respond adequately and prepare an appropriate defense. <u>Conley v. Gibson,</u> 355 U.S. 41, 47-48 (1957).

Here, plaintiff, however inartfully, has identified

the subjects of the claim as "Buckman's Theory," and the "Applicard" (Compl. ¶¶ 1, 3, 6), has stated that he owns the copyrights in these works, that he registered them with the Copyright Office (*id.* at ¶¶ 1, 6), and that defendant "copied by Electronically Reproducing," misappropriated, used and exploited Buckman's Theory. (*Id.* at ¶¶ 37, 40, 43, 46) Plaintiff further contends that Citicorp's application for a Citibank Photocard infringed his copyright on the "Applicard" application. Accordingly, plaintiff has pleaded enough to put the defendant on notice of his claims.

### IV.

**\*3** Even a claim for relief that fulfills the requirements of <u>Fed. R. Civ. P. 8</u>, however, may be dismissed pursuant to <u>Fed. R. Civ. P. 12(b)(6)</u> if it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. <u>Conley,</u> 355 U.S. at 45. The Copyright Act, <u>17 U.S.C. § 101</u>*et. seq.* affords protection to "original works of authorship fixed in any tangible medium of expression."<u>17 U.S.C. § 102(a)</u> (1988 & Supp. V 1993). The Copyright Act explicitly excludes from protection any "idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."<u>17 U.S.C. § 102(b)</u> (1988 & Supp. V 1993); <u>Kregos v. Associated Press,</u> 937 F.2d 700, 705 (2d Cir. 1991). This distinction between ideas and their expression "assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work."<u>Feist Pubs., Inc. v. Rural Tel. Serv.,</u> 499 U.S. 340, 349 (1991).

Two of plaintiff's allegedly protected works -- Buckman's Theory and Buckman's Theory Technology -- are ideas, and as such are not protected by the copyright laws. Buckman's Theory, and Buckman's Theory Technology, which appear to be indistinguishable, are solely the idea for an identification card with a photograph. Plaintiff has not alleged that he ever manufactured such a card or that he obtained a copyright for the card itself. Plaintiff's protestations that his theory is "in fact a text and compilation, documenting the solution to combat credit card fraud and identification abuse," and that it is a documented "method of certifying a credit card as to the identity of the holder and the authenticity of the signature," (Pl. Mem. pp. 4-5) fail to establish that "The Buckman Theory," or "The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 34158 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Buckman Theory Technology," is anything more than a concept or idea. Simply labelling that theory a "text and compilation" and describing the theory in writing do not give the theory copyright protection. Only those ideas and processes that have survived the intense scrutiny of the Patent Office and that have been awarded a United States patent are protectable under federal law. Because Buckman's Theory and Theory Technology are not protected by the copyright laws, and are not patented, his complaint for their infringement must be dismissed.

V.

To the extent that Buckman has expressed his theory in tangible form in the "Applicard," the analysis is different, but the outcome -- dismissal of Buckman's claim -- is the same. To establish a claim of copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright, and (2) the defendant copied the original elements of the protected work. _Feist,_ 499 U.S. at 360. The plaintiff may prove the second element -- copying -- either by direct evidence or by demonstrating that the defendant had access to the plaintiff's work and that the two works are "substantially similar." _Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,_ 996 F.2d 1366, 1372 (2d Cir. 1993). A court may dismiss a copyright claim if it concludes that no reasonable jury could find that the two works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the plaintiff's work. _Warner Bros., Inc. v. American Broadcasting Cos.,_ 720 F.2d 231, 240 (2d Cir. 1983). In this case, even if I assume that plaintiff has a valid copyright for the Applicard and that defendant had access to the Applicard, plaintiff's claim must be dismissed because review of both the Applicard and Citibank's application for a Citibank Photocard reveals that the two documents are not substantially similar, and that any similarities between them relate only to non-copyrightable elements.

**\*4** Named the "Personal, Certifiable Title Identification Card," Plaintiff's Applicard No. 1299L is a generic application for an identification card. At the top of the page, the form asks the applicant to indicate whether he is applying for a "Millionaire," "Customer," or "Signature" card. The application then requests the applicant's name, address, bank or financial institution, credit card number and bank account number. In the next section, titled "Acknowledgement" and printed in a Gothic font, the

Applicard states that a notary public will "Observe The Acknowledgement Of My Said Title Claim."The Applicard then provides space for the applicant's name, address, telephone number, social security number, date of birth, race, sex, weight and height. The Applicard contains blanks for a signature and notarial certification, and language thanking the notary for witnessing the signing of the application. The Applicard also contains a small space for a photograph of the applicant in the top left corner of the form. Finally, the application contains a warning at the bottom that

Identification abuse in a fraudulent scheme is a crime often punishable by law. Personal, Certifiable Title Identification Cards Are for Title Related Business Transacting, Title Referencing and Auxilary Credentials. Applicard Applications, The Mighty Card and Title Identification Cards Are New Phases of Personal Identification. The Authorship And Design of Applications, Engineering and Construction of Certifiable Title Identification Cards Was Created by E.M.B. of the Mighty Card Incorporated, 629 North Duncan St. Baltimore, Md. 21213, Telephone # (301) 276-4600. These Said Materials Are Not To Be Reproduced for Resale At Any Time Or Place Unless Written Authorization Have Been Granted By The Mighty Card Inc.

(Compl. Ex. E) (grammar and capitalization in original).

The Citibank application differs substantially. In contrast to the broad scope of the Applicard, the Citibank application covers only a specific type of photo identification, available only to specific people -- _i.e._ it allows existing Citibank credit card holders to add a photograph to their credit card at no extra cost. Like the Applicard, the Citibank application includes space for the applicant's photograph. But the Citibank application has a larger -- two-inch-square -- space for a photograph, in the bottom left half of the page, and shows a sample photograph in the top right half of the page. The Citibank application also portrays in the top left corner the credit cards to which a photograph may be attached, followed by specific instructions for the applicant. The Citibank application includes space for the applicant's name, address, social security number, credit card number(s), and signature. All the text on the Citibank form is in either block or italicized font, of varying sizes; none is in the Gothic font used for the headings on the Applicard. Moreover, the Citibank application does not include the above-quoted warning of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 34158 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Applicard, or any of the Applicard's other original text. Finally, the Citibank application is a fold-over, postage-paid form that the customer can mail to Citibank to receive a new credit card.

**\*5** To be sure, there are some similarities between the Applicard and the Citibank application, but these similarities are not "substantial," and do not reflect the "original elements" of plaintiff's work. Both forms ask the applicant to submit a photograph, and both forms request the applicant's name, address, social security number and signature. That both forms include space for a photograph is simply another way of saying that both incorporate the idea for photo identification, which, as discussed above, is not copyrightable. That both forms include space for the applicant's basic identification information -- name, address, social security number and signature - - also does not give rise to a claim for infringement. Those portions of the applications seek unoriginal, garden-variety identification information, as do most, if not all other applications for an identification card. Moreover, the only conceivably original features of this portion of the Applicard -- the organization, structure and format -- are nowhere to be found in the Citibank application. Accordingly, plaintiff's complaint for copyright infringement of the Applicard is dismissed.

VI.

Plaintiff contends also that Citicorp violated § 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a) (1994). That section states that

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which --

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (1994). This section authorizes two different claims for plaintiffs who have not registered their marks with the Trademark Office: false designation of origin or source, known as "product infringement," and false representation, known as "false advertising." *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc., 926 F.2d 134, 139 (2d Cir. 1991).* In either type of action, a plaintiff must articulate a "reasonable basis" for believing his interest has been or is likely to be damaged by the defendant's actions in order to survive a Rule 12(b)(6) motion to dismiss.*Ortho Pharmaceutical Corp. v. Cosprophar, 32 F.3d 690, 694 (2d Cir. 1994).* Plaintiff must show more than just a subjective belief that his interests are likely to be harmed; he must allege specific facts to support that belief.*Id.*

**\*6** In the Complaint, under the heading "COUNT II - FALSE DESIGNATION OF ORIGIN," plaintiff states that

Defendants have copied by electronically reproducing, used and misappropriated Buckmans' Theory, Certified Credit Card Identification and with heavy radio and television advertisements comparing the Credit Card with a Photograph (IDENTIFICATION) to the new, HighTech Drivers License, is likely to confuse, cause mistakes and deceive the public into believing that there was no legal solution available in creating a Certified Credit Card I.D. with a Photograph against Fraud and Abuse, wherein Individuals would have maintained their Privacy because before Buckmans' Theory, Certified Credit Card Identification with a Photograph could be electronically reproduced, Privacy was and will remain an issue and in which will expire February 4, 1995.

(Compl. ¶ 40) Plaintiff also states in Count IV thatDefendant without any consent from Buckman have copied, misappropriated, used and exploited Buckmans' Theory Certified Credit Card APPLICATION # 1299L with a PHOTOGRAPH AREA and in a manner to likely confuse and deceive the Public into Believing such creation and reproduction, was from the ingenuity of Defendants, in which there is HEAVY television advertisements, NATIONALLY, showing the public that by dialing 1-800-MY-PHOTO and requesting APPLICATION in which TRANSFORMS a CREDIT CARD in to a Certified Credit Card Identification with a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 34158 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

PHOTOGRAPH.

(*Id.* at ¶ 46) (capitalization, spelling, punctuation and grammar in original) In his memorandum of law plaintiff states that he "properly made out his false advertising claim by showing defendant has intentionally set out to deceive the public into believing that 'Only Citibank gives you the added ... security of a ... photocard.'" Plaintiff contends that Citibank intentionally deceived the public because Citibank knew that Buckman also could provide consumers with the security of a photocard. (Pl. Mem. p. 7) To remedy these wrongs, plaintiff seeks $5 billion in damages and an injunction against defendant's use of the photograph credit card.

Although the complaint and the supporting documents go on at some length about defendant's alleged violation, they are silent as to how plaintiff has been or will be damaged by the Citibank photocard. Plaintiff has submitted only his application for a photo identification; he has not stated that he has manufactured any such product, or that he has been unable to do so because of Citibank's offer to its credit card holders to add a photograph on an already existing credit card. Because plaintiff has not alleged any facts to support his claim that marketing the Citibank Photocard injures his own business, plaintiff's Lanham Act claim is dismissed.

Even if plaintiff had alleged facts that demonstrated a likelihood of injury, his Lanham Act claim would fail because Citibank has not made any false statements. As noted above, plaintiff selectively quotes certain statements from the Citibank application and argues that they are false and misleading because he too can provide consumers with the added protection of a photo identification card. However, plaintiff omits critical language; the quoted statement reads in relevant part as follows: "Only Citibank gives you the added convenience and security of a Citibank Photocard ... at no extra cost!"The Citibank application boasts nothing but a truism -- that only Citibank offers Citibank Photocards. No one can dispute the obvious truth of that statement, and that statement alone cannot sustain a claim for false advertising.

## VII.

*7 Although plaintiff discusses his pendent state law claim of tortious interference with pre-contractual relations in his memorandum of law (Pl. Mem. p. 7), that claim is barely discernible from his complaint. Paragraph 27 of the complaint, the asserted basis of the tortious interference claim states that

Upon information and belief and before ANY BODY could ELECTRONICALLY REPRODUCE BUCKMAN'S THEORY CERTIFIED SIGNATURE IDENTIFICATION and even on VOLUNTEER basis, PRIVACY was an ISSUE and Buckman was THREATENED if he spoke Publicly about COPYRIGHTED Buckmans' Theory Technology that is being DELIBERATELY INFRINGED ON.

(Compl. ¶ 27) (capitalization, punctuation, spelling and grammar in original). If that paragraph states a claim for tortious interference with precontractual relations, it eludes me.

Tortious interference with precontractual relations occurs when the defendant intentionally and illegally interferes with the plaintiff's economic opportunities and thwarts a contract that otherwise would have been made.*Volmar Distribs., Inc. v. New York Post Co.,* 825 F. Supp. 1153, 1168-69 (S.D.N.Y. 1993); *L.L. Cool J.,* 145 F.R.D. at 38. Buckman does not allege that he had any contractual negotiations or expectations, that defendant interfered with those negotiations, or that defendant employed any illegal means to do so. Plaintiff states only that he was threatened, without specifying in what way or by whom. Such conclusory allegations, absent supporting facts, fail to state a claim for tortious interference with precontractual relations.

For the foregoing reasons, plaintiff's complaint is dismissed for failure to state a claim upon which relief can be granted.

SO ORDERED.

FN1. Although it is unclear whether "Citicorp," "Citibank," or some other similarly named entity is the proper defendant in this case, (Pl. Mem. pp. 1-2; Def. Reply Mem. pp. 13-14), because all of plaintiff's claims are dismissed, it is not necessary to decide that issue.

S.D.N.Y.,1996.
Buckman v. Citicorp
Not Reported in F.Supp., 1996 WL 34158 (S.D.N.Y.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 34158 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**


END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.